912 P.2d 644

**IDAHO SCHOOLS FOR EQUAL EDUCATIONAL OPPORTUNITY, an unincorporated association of superintendents of schools, By and Through John J. EIKUM, Roger Swanson, Richard Peters, L. Eldon Taylor and Donald Armstrong; Brian Silflow and Ganel Silflow, by and through their parents Dale and Patti Silflow, husband and wife; Donald Paul Crea, by and through his father Gary Crea; Andy Cook, by and through his father Larry Prally; Tavia Gilbert, by and through her parents Terry and Carolyn Gilbert; Gregory Lamm, by and through his mother Kathy Lamm; Sara Kae Gomez, by and through her parents Kathleen and Jose Gomez; Dietrich Stella and Jennifer Stella, by and through their parents Charles and Rebecca Stella; Gregory Daniels, by and through his mother Nancy Daniels; Gina M. Decker, by and through her parents Gene and Linda Decker; Jennifer A. Alder, by and through her parents Max and Judy Alder; Angela F. Gerrard, by and through her parents Roger and Rhoda Gerrard; Catherine A. Sporleder, by and through her mother Joanne Sporleder; Morgan Rounds and Seth Rounds, by and through their parents Ivan Rounds and Brenda Rounds; Kelli Longeteig, by and through her parents Willfred Longeteig and Beverly Longeteig; Don Hoffer, by and through his mother Kit Hoffer; Sarah Malloy, by and through her mother Susie Malloy; Kory Turnbow, by and through his**

mother Donagene Turnbow; Shawna Olsen, Shannon Olsen, and Ryan Olsen, by and through their mother Teresa Olsen; on behalf of themselves and all other school people of the State of Idaho similarly situated, Plaintiffs–Appellants,

and

Moscow School District # 281; Lapwai School District # 341; Mullan School District # 392; Potlatch School District # 285; Whitepine Jt. School District # 286; Kendrick Jt. School District # 283; Kootenai School District # 274; Cascade School District # 422; St. Maries Jt. School District # 41; Orofino Jt. School District # 171; Culdesac Jt. School District # 342; Genesee Jt. School District # 282; Highland–Craigmont Jt. School District # 305; Bruneau–Grandview Jt. School District # 365; Dietrich School District # 314; American Falls School District # 381; Rockland School District # 382; Valley School District # 262; Challis Jt. School District # 181; Horseshoe Bend School District # 73; West Jefferson School District # 253; Council School District # 13; Midvale School District # 433; Garden Valley School District # 71; Richfield School District # 316; Kellogg Jt. School District # 391; Boundary County School District # 101; Kamiah Jt. School District # 304; Lakeland School District # 272; Lewiston Independent School District # 340; Wallace School District # 393, Plaintiffs–Counterdefendants–Appellants,

and

Jerry L. Evans, in his capacity as Idaho State Superintendent of Public Instruction; Phil Batt, in his capacity as Governor of the State of Idaho, Plaintiffs–Respondents,

and

Danielle Luber, Kristin Luber, and Sarah Luber, by and through their parents Stephen and Lorie Luber; John Reese and Ellen Reese, by and through their parents Ron and Susie Reese; Heidi Poehling, Molly Poehling and Amy Poehling, by and through their parents Mike and Sharon Poehling; Brady Roark, Jennifer Roark and Hailey Roark, by and through their parents Keith and Laurie Roark; Kimberly Mecham, Camille Mecham, Aubree Mecham and Morgan Mecham, by and through their parents Milo and Diane Mecham; and Thomas Ryan Healy, by and through his mother Christina Van Beuren, on behalf of themselves and all other school children residing in and attending school in Blaine County, Plaintiffs–in–intervention–Respondents,

and

Blaine County School District # 61; Independent School District of Boise City, Plaintiffs–in–intervention–Counterdefendants–Respondents,

v.

The IDAHO STATE BOARD OF EDUCATION, by and through Roy E. MOSSMAN, Roberta Fields, Diane Bilyeu, Curtis H. Eaton, Joseph Parkinson, Karl Shurtliff, Keith Hinckley, and Jerry L. Evans, as members of the Idaho State Board of Education, Defendants–Respondents,

and

The Legislature of the State of Idaho, by and through Jerry Twiggs as President Pro Tempore of the Senate and Michael Simpson as Speaker of the House, Defendants–Counterclaimants–Respondents.

No. 21818.

Supreme Court of Idaho,
Boise, September 1995 Term.

March 7, 1996.

Givens Pursley & Huntley, Boise, for Appellants. Robert C. Huntley argued.

Alan G. Lance, Attorney General; Michael S. Gilmore, Deputy Attorney General, Boise, for Respondents. Michael S. Gilmore argued.

SILAK, Justice.

This is the second appeal in the appellants' suit for declaratory and injunctive relief against the method and level of funding of public education in Idaho. The first appeal, *Idaho Schools for Equal Educational Opportunity v. Evans,* 123 Idaho 573, 850 P.2d 724 (1993) (*ISEEO I*), resulted in a remand of the case to the district court. The second appeal is from the summary judgment of the district court dismissing appellants' fourth amended complaint as moot. We vacate the summary judgment and remand the case for further proceedings consistent with this opinion.

## I.

### FACTS AND PROCEDURAL BACKGROUND

On June 21, 1990, a declaratory judgment action was filed by the appellants Idaho Schools for Equal Educational Opportunity (ISEEO), an unincorporated association of school superintendents, and by certain school districts, students, citizens and taxpayers against respondents Jerry L. Evans, the Idaho State Board of Education and the Idaho Legislature (collectively the State). The complaint alleged that the method and level of school funding then in existence was inadequate to provide the constitutionally required "uniform" and "thorough" education pursuant to art. 9, § 1 of the Idaho Constitution. A similar suit was filed on September 20, 1990, by the Frazier–Meridian plaintiffs (another group of students, parents and school districts), which was consolidated with the initial suit filed by the ISEEO. On March 12, 1992, the district court issued a memorandum opinion and order granting the State's motion to dismiss for failure to state a claim upon which relief may be granted. ISEEO and the other plaintiffs appealed to this Court.

On March 18, 1993, this Court issued its decision in *ISEEO I.* The Court held the following: (1) pursuant to *Thompson v. Engelking,* 96 Idaho 793, 537 P.2d 635 (1975), the system of school funding did not violate the "uniformity" requirement of the education clause of art. 9, § 1 of the Idaho Constitution; (2) that the equal protection clause was not violated by the current school funding system; (3) that the citizen/taxpayer plaintiffs did not have standing to sue; and (4) that *Thompson* did not decide whether

the "thoroughness" requirement of the education clause was violated in that case and therefore did not foreclose the ISEEO's suit.

The Court made the following additional holdings with respect to the thoroughness issue: (1) that the judicial branch has the responsibility to determine whether Idaho's system of education meets the thoroughness requirements of art. 9, § 1; (2) that the politically difficult task of defining thoroughness has been simplified because the executive branch (the State Board of Education (the Board)) has already promulgated educational standards under the legislative directive of I.C. § 33–118; (3) that the standards of the Board's Rules and Regulations for Public Schools, K–12, IDAPA 08.02, for school facilities, instructional programs and textbooks, and transportation, are consistent with the thoroughness requirements of the Idaho Constitution; (4) that the Court's holding of the consistency of the IDAPA standards with a definition of thoroughness is limited to the standards as they existed at the time the opinion was issued, the Court expressing no opinion as to whether the IDAPA standards would be consistent with that definition if the Board were to amend them; and (5) that if the ISEEO were able to prove that school districts cannot meet the standards established by the Board with the funds provided under the current funding system, they will have presented a prima facie case that the State has not established and maintained a system of thorough education. The Court thus vacated the district court's order dismissing the thoroughness claims and remanded for further proceedings.

On remand, following a status conference, the district court allowed the parties to amend their pleadings. ISEEO filed a third amended complaint which eliminated an allegation referring to inequality of public school funding among districts, a theory rejected in *ISEEO I*, and the State filed counterclaims contending that the school districts must allocate their available resources to comply with the Board rules before asking for additional state assistance.

ISEEO and the State both moved for summary judgment, and ISEEO moved to dismiss the State's counterclaims. ISEEO withdrew its motion for summary judgment on the day of argument. The district court later heard argument on the State's motion for summary judgment and issued its memorandum opinion and order on January 11, 1994, denying the motion and denying ISEEO's motion to dismiss the State's counterclaims.

ISEEO filed a fourth amended complaint on April 1, 1994, which added plaintiffs, and a notice of intent to proceed with trial and request for a trial date on May 20, 1994. The State then filed a motion for declaration of mootness and dismissal of proceeding as moot on June 15, 1994, which was later replaced by a motion for summary judgment on the ground of mootness on August 2, 1994. The State argued that the lawsuit had become moot due to legislative enactments regarding funding and standards.

On August 4, 1994, ISEEO again moved to amend its complaint to meet the mootness contention by adding the following paragraph:

19. The references in this Complaint to "level and method of funding", "adequate funding", "present funding system", "present level of funding", "thorough education", and all other sentences written in the present tense, refers to the present tense of the operative verbs on the date this Complaint was filed and each succeeding moment or day through trial and entry of final judgment.

The district court issued its memorandum opinion and order on November 30, 1994, granting the State's motion for summary judgment on grounds of mootness. The court listed four significant changes that had occurred which impacted the status of the case:

"1) The 1994 legislature appropriated $653,310,000 for public schools which is the largest appropriation in the history of the state and which is materially larger than appropriations in the past.

2) The legislature changed the funding formula which may significantly impact the funding of schools;

3) The 1994 legislature enacted a definition of a thoroughness which is outside matters considered by the Supreme Court;

4) The State Board of Education regulations in effect at the time of the Supreme Court decision which it determined were consistent with the standard of thoroughness will be replaced by new standards by April 1, 1996."

The district court thus held that the primary issues of the lawsuit had or would shortly change, and that sufficient changes had taken place to declare the action moot. The court therefore granted the motion for summary judgment on the basis of mootness.[1] Thereafter, on December 30, 1994, ISEEO filed a motion requesting a ruling on its motion to amend the complaint. The district court denied the motion with prejudice on January 11, 1995. ISEEO appeals from the summary judgment and from the denial of the motion to amend the complaint.

## II.

### ISSUES ON APPEAL

1. Whether the trial court erred in dismissing ISEEO's complaint upon the basis that it was moot.

2. Whether the trial court erred in denying ISEEO's motion to amend its complaint and in ruling that the order was with prejudice to filing an amended complaint.

3. Whether the trial court erred in failing to award attorney fees to ISEEO, and whether ISEEO is entitled to an award of attorney fees on appeal under the private attorney general doctrine.

## III.

### ANALYSIS

### A. ISEEO'S COMPLAINT IS NOT MOOT.

For almost a century the Idaho Supreme Court has employed the doctrine of mootness. *Porter v. Speno,* 13 Idaho 600, 603, 92 P. 367, 368–69 (1907) ("It is the province of this court to hear and determine real controversies between litigants, but not moot questions."); *Wilson v. Boise City,* 7 Idaho 69, 74, 60 P. 84, 86 (1900) (an injunction will not issue to enjoin a sale that has already taken place). Idaho courts continue to dismiss moot questions today. *Phillips v. Consolidated Supply Co.,* 126 Idaho 973, 975, 895 P.2d 574, 576 (1995) (Department of Health and Welfare's change to information contained in marriage certificate moots case seeking to order department to change information in marriage certificate); *Moon v. Investment Bd. of the State of Idaho,* 102 Idaho 131, 131, 627 P.2d 310, 310 (1981) (case remanded to district court to be dismissed as moot when statute and rules promulgated under the statute were repealed before statute ever applied to the parties).

Idaho courts have also had an opportunity to consider the definition of mootness. In *Bradshaw v. State,* 120 Idaho 429, 432, 816 P.2d 986, 989 (1991), this Court held that a case becomes moot when "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." In *Idaho County Property Owners Ass'n., Inc. v. Syringa Gen. Hosp. Dist.,* 119 Idaho 309, 315, 805 P.2d 1233, 1239 (1991), the Court held that "an issue is moot if it presents no justiciable controversy and a judicial determination will have no practical effect upon the outcome."

One of the prerequisites to a declaratory judgment action is an actual or justiciable controversy. *Miles v. Idaho Power Co.,* 116 Idaho 635, 639, 778 P.2d 757, 761 (1989). This Court has set forth the pivotal elements of a justiciable controversy as follows:

A "controversy" in this sense must be one that is appropriate for judicial determination.... A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot....

---

1. In July 1994, the Frazier–Meridian plaintiffs conditionally stipulated with the State to dismiss their suit in light of the statutory changes made by the 1994 legislature. The district court issued an order of conditional dismissal based on the stipulation. The condition of dismissal was that the dismissed plaintiffs would be allowed to defend the new statutes should there be challenges to them.

The controversy must be definite and concrete, touching the legal relations of the parties having adverse legal interests.... It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Weldon v. Bonner County Tax Coalition*, 124 Idaho 31, 36, 855 P.2d 868, 873 (1993), *quoting Harris v. Cassia County*, 106 Idaho 513, 516, 681 P.2d 988, 991 (1984).

■ Generally, courts will not grant declaratory judgments which merely answer a moot or abstract question. An action for declaratory judgment is moot where the judgment, if granted, would have no effect either directly or collaterally on the plaintiff, the plaintiff would be unable to obtain further relief based on the judgment and no other relief is sought in the action. *See generally* 22A Am.Jur.2d *Declaratory Judgments* § 41 (1988). The existence of the required elements for declaratory relief, including the existence of a "controversy," should be determined as of the time of the court's trial or hearing, rather than at the commencement of the action. *See, e.g., Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969).

■ The general rule of mootness has also been applied to the construction of a statute or regulation. Actions which challenge the validity or the manner of implementation of a statute or regulation are often mooted because the provision has been repealed, amended or revised. There have been cases in which this Court has held that amended or repealed statutes moot the controversy. *See, e.g., Briggs v. Golden Valley Land & Cattle Co.*, 97 Idaho 427, 434, n. 5, 546 P.2d 382, 389, n. 5 (1976) (Court, in reversing trial court, did not review moot issue of injunctive relief obtained against state officer under statute that had been repealed in the interim); *Cenarrusa v. Peterson*, 95 Idaho 395, 396, 509 P.2d 1316, 1317 (1973) (Court did not consider moot issue of Secretary of State's authority to seek manda-

mus under since-repealed statute). However, such actions are not mooted by an amendment or replacement if the controversy is not removed or the amendment or replacement does not otherwise resolve the parties' claims. *See generally* 1A C.J.S. *Actions* § 45a (1985). Further, an exception to the mootness doctrine exists if the case is capable of repetition yet evading review. *V–1 Oil Co. v. State Tax Comm'n*, 112 Idaho 508, 510, 733 P.2d 729, 731 (1987); *Mallery v. Lewis*, 106 Idaho 227, 234, 678 P.2d 19, 26 (1983).

■ In the present case, the district court did not expressly find that the case was nonjusticiable due to the changes made by the 1994 legislature. Rather, it appears that the court essentially determined it could not grant any relief or resolve the controversy because it found the funding by the legislature to be a shifting target and that the standards of thoroughness had changed. The 1994 legislature passed five bills that year applicable to public school funding. First, S.B. 1291 was passed which added a new section to the Idaho Code, I.C. § 33–1612, that defined thoroughness and directed the Board to adopt rules to establish a thorough system of education as required by the Constitution. 1994 Session Laws 25. Second, the legislature passed H.B. 867 which sunsetted the existing rules of the Board effective April 1, 1996, and directed the Board to draft new rules to replace the rules to be sunsetted.[2] 1994 Session Laws 448. Third, S.B. 1560 and S.B. 1614 were passed which amended I.C. § 33–1001, *et seq.*, the chapter setting forth the formulas for distribution of state funds to local school districts. 1994 Session Laws 428 and 440. Fourth, the legislature passed S.B. 1617 which appropriated $653,310,000 for the 1994–1995 school year. 1994 Session Laws 456. The court reasoned that potentially this suit could be maintained perpetually because each time the legislature amends or revises the applicable statutes or regulations, the complaint might be amended to challenge the funding. The district court further noted that when this Court decided *ISEEO I*, the Supreme Court approved a set of standards and that it

---

**2.** On February 7, 1996, H.B. No. 473 was enacted into law extending the sunsetting date of the rules of the Board from April 1, 1996 to April 1, 1997.

appeared at that time that the case would be tried under those standards. In the meantime, however, those standards were sunsetted by the legislature and the district court noted that by the time the case would have been tried, another set of standards could have been in place. The court thus determined that these changes were sufficient to warrant a finding of mootness.

We do not agree that the actions of the 1994 legislature render this action moot, and hold that a justiciable issue does indeed exist. Although the legislature made the changes noted above, at the time that the summary judgment motion was heard, there still remained in place the Idaho constitutional requirement of a *thorough* education. Article 9, § 1 of the Idaho Constitution provides:

> **Legislature to establish system of free schools.**—The stability of a republican form of government depending mainly upon the intelligence of the people, it shall be the duty of the legislature of Idaho, to establish and maintain a general, uniform and thorough system of public, free common schools.

This provision has not been amended or repealed during the pendency of this litigation. The increases in the legislature's appropriations, the revising of the funding formulas, the adopting of the statutory definition of "thoroughness," and the sunsetting of the Board of Education's regulations do not answer the question whether a constitutionally "thorough" education is provided. Even though these statutes and regulations may be amended or even repealed, there remains a constitutional provision requiring that the state provide a thorough education. Thus, we hold that all of the legislature's enactments and changes in 1994 did not render this action moot.

In a case factually similar to the one at bar, a nonprofit organization of school districts, taxpayers, parents and children brought an action seeking a declaration that Oregon's current method of funding public schools violated that state's constitution. *Coalition for Equitable Sch. Funding, Inc. v. Oregon*, 311 Or. 300, 811 P.2d 116 (1991). The plaintiffs claimed that the legislature had failed to provide by law for the establishment of a uniform, and general system of common schools in violation of Article VIII, section 3, of the Oregon Constitution because state statutes and administrative rules then in effect imposed higher standards on school districts than in previous years, and that the state paid to school districts less money than they needed to comply with those standards. 811 P.2d at 117. The state responded by arguing that the passage of an amendment to the Oregon Constitution concerning the financing of school districts mooted the case and that it should therefore be dismissed. The state argued that the case was moot because the full dimensions of the changes wrought by the amendment could not be known until the legislature responded with implementing legislation. The Oregon Supreme Court disagreed holding that even though there was a potential for legislation to alter the factual predicate of questions concerning the constitutionality of the current method of funding for public schools, this was not enough to make the case moot. *Id.*, at 118.

Additionally, even assuming *arguendo* that this case could technically be deemed "moot," it falls within the exception to the mootness doctrine that the case is capable of repetition yet evading review. *V–1 Oil Co. v. State Tax Comm'n*, 112 Idaho 508, 510, 733 P.2d 729, 731 (1987); *Mallery v. Lewis*, 106 Idaho 227, 234, 678 P.2d 19, 26 (1983); *Southern Pacific Terminal Co. v. I.C.C.*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). Theoretically, the Board could promulgate new standards every year, sunsetting the previous year's standards. If this were the case, then each time a declaratory judgment action is filed claiming that the method of school funding is not "thorough" under that year's standards, the district court could dismiss the case as moot claiming that those standards had been sunsetted. Thus, a situation arises wherein the case is repetitive or continuing, but is incapable of being resolved. *See, e.g., New Haven v. State Bd. of Education*, 228 Conn. 699, 638 A.2d 589 (1994) (City's appeal from an order requiring it to appropriate sufficient funds to the city board of education to meet minimum expenditure requirements for that particular

school year was within the exception to the mootness doctrine for questions capable of repetition yet evading review).

Another exception to the mootness doctrine recognized by this Court is the public interest exception. Under this exception, even if the case is determined to be moot, if the issue presented is one of substantial public interest, the Court may address the issue for future direction and guidance. *Johnson v. Bonner County Sch. Dist. No. 82,* 126 Idaho 490, 492, 887 P.2d 35, 37 (1994). Even were we to determine that this controversy is technically moot due to the sunsetting of the Board's regulations, the issue whether current levels of state funding meet the constitutionally-mandated requirement of "thoroughness" is a matter of great fundamental importance. The "thoroughness" of the system of public education affects the present and future quality of life of Idaho's citizens and its future leaders, its children.

We therefore vacate the district court's dismissal of this case on the basis of mootness and remand for further proceedings.

### B. THE DENIAL OF ISEEO'S MOTION TO AMEND THE COMPLAINT WAS AN ABUSE OF DISCRETION.

After the State asserted that ISEEO's complaint should be dismissed as moot due to the changed circumstances, ISEEO moved to amend its complaint to meet this contention by adding paragraph 19, quoted above, in an effort to meet the State's mootness motion. The district court did not rule on the motion until requested to do so by ISEEO after it had already dismissed the case as moot. The court then issued a one paragraph order denying the motion: "The court has dismissed the complaint. The dismissal is with prejudice to the filing of the amended complaint. The motion to amend the complaint is denied." ISEEO argues that the district court abused its discretion in denying the motion to amend the complaint. We agree.

I.R.C.P. 15(a) provides that amendment to pleading may be made only by leave of the court or by agreement of the parties, but that "leave shall be freely given when justice so requires." This Court has held that "courts should favor liberal grants of leave to amend." *Wickstrom v. North Idaho College,* 111 Idaho 450, 453, 725 P.2d 155, 158 (1986). This Court explained Rule 15(a) as follows:

"Rule 15(a) declares that leave to amend 'shall be freely given where justice so requires'; this mandate is to be heeded. [Citation omitted]. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, "be freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Clark v. Olsen,* 110 Idaho 323, 326, 715 P.2d 993, 996 (1986), *quoting Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). In *Clark* and in *Smith v. Great Basin Grain Co.,* 98 Idaho 266, 272–73, 561 P.2d 1299, 1305–06 (1977), this Court held that a district court's refusal to grant leave to amend without any justifying reason is, per se, an abuse of discretion.

We hold that the district court abused its discretion by denying ISEEO's motion to amend the complaint without any justifying reason, and vacate that order.

### C. ISEEO IS NOT ENTITLED TO ATTORNEY FEES AT THE TRIAL LEVEL OR ON APPEAL UNDER THE PRIVATE ATTORNEY GENERAL DOCTRINE.

ISEEO claims that it is entitled to attorney fees at both the trial level and on

appeal under the private attorney general doctrine. We disagree and hold that ISEEO is not entitled to attorney fees at the trial level because they were not requested in either ISEEO's opposition to the State's motion for summary judgment or in ISEEO's motion to amend the complaint. ISEEO has also not yet prevailed on the underlying action.

 We further hold that ISEEO is not entitled to fees under the private attorney general doctrine on appeal. In *County of Ada v. Red Steer Drive–Ins of Nevada, Inc.*, 101 Idaho 94, 609 P.2d 161 (1980), this Court articulated a three-factor test to be considered in awarding attorney's fees under the private attorney general theory: "(1) the strength or societal importance of the public policy vindicated by the litigation, (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff, (3) the number of people standing to benefit from the decision." 101 Idaho at 100, 609 P.2d at 167. These factors indicate that there must be some resolution of the substantive issues before a decision on attorney fees can be reached. In this opinion, we are vacating the district court's decision and remanding the case for further proceedings. This Court is not resolving the merits of the case, nor do we express any opinion regarding the merits. Thus, ISEEO is not entitled to attorney fees on appeal.

## IV.

### CONCLUSION

We hold that the district court erred in dismissing ISEEO's complaint as moot. Although the legislature increased the appropriations for the 1994–1995 school year, revised the funding formula, adopted a statutory definition of thoroughness and sunsetted the State Board of Education's regulations, there remains the fundamental issue whether a thorough education had been provided by the State as mandated by art. 9, § 1 of the Idaho Constitution.

We also hold that the district court abused its discretion in denying ISEEO's motion for leave to amend its complaint.

Accordingly, the decision and judgment of the district court is vacated and the case is remanded for further proceedings consistent with this opinion.

Finally, we hold that ISEEO is not entitled to attorney fees at the trial level or on appeal under the private attorney general doctrine. Costs on appeal are awarded to ISEEO. I.A.R. 40.

JOHNSON and TROUT, JJ., and WOODLAND, J. Pro Tem., concur.

McDEVITT, C.J., concurs in the result.